# Exhibit 3



CITIZENS FOR
RESPONSIBILITY &
ETHICS IN WASHINGTON

December 12, 2025

**VIA FOIA.gov & eousafoia.usdoj.gov**

Christina Butler
Chief, FOIA/PA Unit
Criminal Division
Department of Justice
950 Constitution Ave NW
Washington, DC 20530-0001

Kevin Krebs
Assistant Director, FOIA/Privacy Unit
Executive Office for United States Attorneys
U.S. Department of Justice
175 N Street, NE, Suite 5.400
Washington, DC 20530-0001

Michael G. Seidel
Section Chief, Record/Information Dissemination Section
Federal Bureau of Investigation
200 Constitution Drive
Winchester, VA 22602

   Re:  <u>**Freedom of Information Act Request**</u>

Dear Officers:

  Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and U.S. Department of Justice ("DOJ") regulations.

  Specifically, CREW requests the following records from January 1, 2014 to the date this request is processed:

   1. All records related to the investigation of United States Representative Enrique Roberto "Henry" Cuellar pertaining to alleged violations of any

provisions of law relating to his federal indictment,[1] including but not limited to DOJ's decision whether or not to bring criminal charges against Rep. Cuellar.

2.  All records that mention, reference, or relate to granting a pardon to Rep. Cuellar, including records mention, reference, or relate to President Trump's pardon of Rep. Cuellar.[2]

    a.  This request includes all internal or external communications about whether to recommend or grant a pardon to Rep. Cuellar.

The above request excludes material covered by grand jury secrecy pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure. The request also excludes agency records consisting solely of court filings, news articles, press clippings, and other publicly-available material.

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including paper records, electronic records, audiotapes, videotapes, photographs, data, and graphical material. Our request includes without limitation all correspondence, letters, emails, text messages, facsimiles, telephone messages, voice mail messages, and transcripts, notes, or minutes of any meetings, telephone conversations, or discussions. Our request also includes any attachments to emails and other records, and anyone who was cc'ed or bcc'ed on any emails.

If it is your position any portion of the requested records is exempt from disclosure, CREW requests that you provide it with an index of those documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). If some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. *See* 5 U.S.C. § 552(b). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible, please state what portion of the document is non-exempt, and how the material is dispersed throughout the document. *See Mead Data Central v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977).

Please be advised that CREW intends to pursue all legal remedies to enforce its rights under FOIA. Accordingly, because litigation is reasonably foreseeable, the agency should institute an agency wide preservation hold on all documents potentially responsive to this request.

## **Fee Waiver Request**

In accordance with 5 U.S.C. § 552(a)(4)(A) and agency regulations, CREW requests a

---

[1] Press Release, U.S. Dep't of Just., *U.S. Congressman Henry Cuellar Charged with Bribery and Acting as a Foreign Agent* (May 3, 2024), https://www.justice.gov/archives/opa/pr/us-congressman-henry-cuellar-and-his-wife-charged-bribery-unlawful-foreign-influence-and.

[2] *See* @RealDonaldTrump, TruthSocial (Dec. 3, 2025), https://truthsocial.com/@realDonaldTrump/posts/115656343773820545.

waiver of fees associated with processing this request for records. The subject of this request concerns the operations of the federal government, and the disclosures likely will contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. *See id.* § 552(a)(4)(A)(iii). Moreover, the request primarily and fundamentally is for non-commercial purposes. *See, e.g.*, *McClellan Ecological v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987).

In 2024, the DOJ announced in a press release that United States Representative Henry Cuellar had been indicted by a federal grand jury for accepting bribes from an Azerbaijani oil company, wholly owned by the government of Azerbaijan, and a Mexican bank in exchange for official acts taken as a congressman.[3] More specifically, the indictment alleged that Rep. Cuellar, along with his wife Imelda Cuellar, beginning in 2014 and at least through November 2021, accepted approximately $600,000 in combined bribes from the oil company and the Mexican bank.[4] According to the press release, "bribe payments were allegedly laundered, pursuant to sham consulting contracts, through a series of front companies and middlemen into shell companies owned by Imelda Cuellar, who performed little to no legitimate work under the contracts" and in exchange, Rep. Cuellar used his office to influence foreign policy to benefit Azerbaijan and to influence Executive Branch officials on policies that would benefit the Mexican bank.[5] Rep. Cuellar was charged with various counts related to bribery and under the Foreign Agents Registration Act ("FARA").

In May 2024, following the DOJ's indictment of Rep. Cuellar, the bipartisan House of Representatives Committee on Ethics  voted unanimously to authorize an investigation into Rep. Cuellar's actions.[6] On July 16, 2025, the Justice Department decided to move ahead with the bribery case against Rep. Cuellar, but to drop the FARA charges.[7] Later that month, the Ethics Committee issued a press release, announcing that it had voted unanimously to re-authorize the investigation of Rep. Cuellar.[8] In that release, the Committee acknowledged the significance of departing from its usual practice of delaying investigations until the conclusion of criminal proceedings, noting that it was "aware of the risks associated with dual investigations and is in communication with the Department of Justice to mitigate the potential risks while still meeting the Committee's obligations to safeguard the integrity of the House."[9]

---

[3] Press Release, supra note 1.

[4] *Id.*

[5] *Id.*

[6] Luke Broadwater, *House Ethics Panel Will Investigate Cuellar on Bribery Charges*, NY Times (May 29, 2024), https://www.nytimes.com/2024/05/29/us/politics/house-ethics-panel-henry-cuellar-bribery-charges.html.

[7] Glenn Thrush, *Justice Dept. to Move Ahead With Bribery Case Against Cuellar*, NY Times (July 16, 2025), https://www.nytimes.com/2025/07/16/us/politics/henry-cuellar-bribery-case-justice-department.html.

[8] Press Release: *Statement of the Chairman and Ranking Member of the Committee on Ethics Regarding Representative Henry Cuellar*, House of Representatives Committee on Ethics (July 25, 2025), https://ethics.house.gov/press-releases/statement-of-the-chairman-and-ranking-member-of-the-committee-on-ethics-regarding-representative-henry-cuellar-2/.

[9] *Id.*

On December 3, 2025, however, President Trump abruptly announced via Truth Social that he had issued a "full and unconditional" pardon of Rep. Cuellar and Imelda Cuellar.[10] The post, without evidence, blamed the Biden Administration for weaponizing the Justice Department against Rep. Cuellar because of his position on President Biden's immigration policy.[11] The post also included screenshots of a letter from Rep. Cuellar's two daughters, asking Trump to issue the pardon. Since announcing the pardon, and Rep. Cuellar's decision to again run for Congress as a member of the Democratic Party, President Trump lashed out on social media in a lengthy post, referring to the decision as "[s]uch a lack of LOYALTY."[12]

The records CREW seeks would help explain the severity of the case against Rep. Cuellar and why he—a prominent member of Congress—received this pardon. The public has a vital interest in learning whether the decision to pardon Rep. Cuellar was motivated, by considerations apart from the sufficiency of the evidence against him.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the public's right to be aware of the activities of government officials, to ensuring the integrity of those officials, and to highlighting and working to reduce the influence of money on politics. CREW uses a combination of research, litigation, and advocacy to advance its mission. CREW intends to analyze the information responsive to this request and to share its analysis with the public through reports, press releases, or other means. In addition, CREW will disseminate any documents it acquires from this request to the public through its website, www.citizensforethics.org. The release of information obtained through this request is not in CREW's financial interest.

CREW further requests that it not be charged search or review fees for this request pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) because CREW qualifies as a member of the news media. *See Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1386 (D.C. Cir. 1989) (holding non-profit a "representative of the news media" and broadly interpreting the term to include "any person or organization which regularly publishes or disseminates information to the public").

CREW routinely disseminates information obtained through FOIA to the public in several ways. For example, CREW's website receives hundreds of thousands of page views every month. The website includes blogposts that report on and analyze newsworthy developments regarding government ethics, corruption, and money in politics, as well as numerous reports CREW has published to educate the public about these issues. These reports frequently rely on government records obtained through FOIA. CREW also posts the documents it obtains through FOIA on its website. Under these circumstances, CREW satisfies fully the criteria for a fee waiver.

---

[10] Supra note 2.
[11] *Id.*
[12] *See* @RealDonaldTrump, TruthSocial (Dec. 7, 2025), https://truthsocial.com/@realDonaldTrump/posts/115678452939414622.

**Expedited Processing Request**

        CREW is entitled to expedited processing because there is an "urgency to inform the public concerning actual or alleged Federal Government activity," and CREW "is primarily engaged in disseminating information," 5 U.S.C. § 552(6)(E)(v)(II); 28 C.F.R. § 16.5(e)(1)(ii). In addition, DOJ should grant expedited processing because there is "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv).

        CREW is "primarily engaged in disseminating information" to the public. This "standard 'requires that information dissemination be the main [and not merely an incidental] activity of the requestor,'" but "publishing information 'need not be [the organization's] sole occupation.'" *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 298 (D.D.C. 2017). CREW routinely disseminates information obtained through FOIA to the public in several ways. For example, CREW's website receives hundreds of thousands of page views every month. The website includes blogposts that report on and analyze newsworthy developments regarding government ethics, corruption, and money in politics, as well as numerous reports CREW has published to educate the public about these issues. These reports frequently rely on government records obtained through FOIA. CREW also posts the documents it obtains through FOIA on its website. CREW is a credible requestor and disseminator of information often relied on by major media outlets.[13]

        The requested records concern a matter of current exigency to the American public because they are "the subject of a currently unfolding story," *Al-Fayed v. C.I.A.*, 254 F.3d 300, 310 (D.C. Cir. 2001), about President Trump's unethical use of the pardon power to benefit politicians indicted or convicted of engaging in corruption[14] who may be potential political allies and to seek particular actions from them after they have been pardoned.  Here, President Trump, in announcing his pardon, took it as an opportunity to praise Rep. Cuellar for his policy stance on immigration and posted a letter from Rep. Cuellar's daughters, appealing directly to the president's political grievances.[15] The letter asserts that Rep. Cuellar's political opinions and stance on immigration policy were the reasons he was indicted, appealing to President Trump's claims of a weaponized government, and empathizes with the legal "challenges" President Trump himself has faced.[16] President Trump's publication of this letter and praise of Rep. Cuellar's political positions creates a perception that individuals can receive pardons by appealing directly to the president's

---

[13] *See, e.g., Citizens for Responsibility and Ethics in Washington*, N.Y. Times, https://www.nytimes.com/topic/citizens-for-responsibility-and-ethics-in-washington (last visited Dec. 12, 2025) (list of New York Times articles referencing CREW spanning over a decade); Ed Pilkington and Dharna Noor, *Top US ethics watchdog investigating Trump over dinner with oil bosses*, The Guardian (May 15, 2024), https://www.theguardian.com/us-news/article/2024/may/15/ethics-watchdog-investigating-trump-big-oil  (referring to CREW as "Top US ethics watchdog").

[14] *See* Esther Erikkson Von Allmen and Miru Osuga, *Trump has granted clemency to 17 corrupt politicians—so far*, Citizens for Responsibility and Ethics in Washington (June 2, 2025, updated Oct. 17, 2025), https://www.citizensforethics.org/reports-investigations/crew-investigations/trump-has-granted-clemency-to-16-corrupt-politicians-so-far/.

[15] Supra note 2.

[16] *Id.*

personal grievances. This incentive structure distorts the purpose and practical functioning of the justice system.[17] Further, President Trump's subsequent accusation that Rep. Cuellar demonstrated a "lack of LOYALTY" because he chose to run for Congress as a Democrat suggests that President Trump expected particular behavior from Rep. Cuellar's in exchange for his pardon.[18] As President Trump continues issuing pardons to politicians indicted or convicted of engaging in corruption, including in another case last week involving the former President of Honduras, Juan Orlando Hernández,[19] it is important that the American public understand the administration's use of the pardon power and President Trump's demands from those he pardons.

Furthermore, there is an urgent need for Congress and the American public to receive information about Rep. Cuellar's prosecution and President Trump's decision to issue a pardon in order to understand whether the pardon was the result of any corrupt dealing. First, Rep. Cuellar continues serving in the House of Representatives and is, by all accounts, still under active investigation by the House Ethics Committee. The public has an urgent right to understand the severity of the conduct underlying his initial indictment and whether a sitting member of Congress engaged in any corrupt dealings around his pardon. Without expedited release of this information, residents of Rep. Cuellar's district will not get answers to these urgent questions before the end of this Congress. Second, the House Ethics Committee is engaged in an ongoing and time-sensitive investigation of Rep. Cuellar's conduct that will end when this Congress ends. Now that the DOJ is no longer prosecuting this case, it is vital that the public and the House Ethics Committee have access to the DOJ's investigative records to ensure proper enforcement of ethics laws and that there is public oversight over President Trump's pardon. "If production of [these] records is substantially delayed, the public and Congress will be 'precluded . . . from obtaining in a timely fashion

---

[17] *See, e.g.*, Mary Norkol, *Former Illinois House Speaker Michael Madigan asks Trump to pardon him after conviction*, STLPR (Dec. 10, 2025), https://www.stlpr.org/government-politics-issues/2025-12-10/former-illinois-speaker-madigan-asks-trump-pardon.

[18] Gabby Birenbaum, *Donald Trump pardons Texas Democrat Henry Cuellar*, The Texas Tribune (Dec. 3, 2025), https://www.texastribune.org/2025/12/03/henry-cuellar-donald-trump-pardon-bribery/; Megan Lebowicz, *'No more Mr. Nice guy': Trump bashes Rep. Henry Cuellar for running as a Democrat after pardon*, NBC News (Dec. 7, 2025), https://www.nbcnews.com/politics/donald-trump/trump-bashes-henry-cuellar-running-democrat-pardon-texas-rcna247829; Anushka Patil, *Trump Blasts Lawmaker for Remaining Democrat After Receiving Pardon*, NY Times (Dec. 7, 2025), https://www.nytimes.com/2025/12/07/us/politics/trump-henry-cuellar-democrat-run-criticism.html; Bill Barrow, *Trump calls Democratic Rep. Cuellar 'disloyal' for not switching parties after pardon*, PBS News (Dec. 7, 2025), https://www.pbs.org/newshour/politics/trump-calls-democratic-rep-cuellar-disloyal-for-not-switching-parties-after-pardon; Calen Razor and Meredith Lee Hill, *Henry Cuellar will seek reelection as a Democrat after Trump pardon*, Politico (Dec. 3, 2025), https://www.politico.com/live-updates/2025/12/03/congress/henry-cuellar-pardon-reelection-party-00674518; *'Quid pro quo wasn't so great': Trump fumes after pardon of Texas Congressman doesn't pan out*, MS NOW (Dec. 8, 2025), https://www.ms.now/deadline-white-house/watch/quid-pro-quo-wasn-t-so-great-trump-fumes-after-pardon-of-texas-congressman-doesn-t-pan-out-2473877059922;

[19] Annie Correal, *Honduras Issues Arrest Warrant for Ex-President Pardoned by Trump*, NY Times (Dec. 8, 2025), https://www.nytimes.com/2025/12/08/world/americas/honduras-hernandez-arrest-warrant.html.

information vital to the current and ongoing debate surrounding the legality of' a high-profile government action." *Citizens for Responsibility and Ethics in Washington v. U.S. DOGE Service,* No. 25-cv-511, 2025 WL 752367, at *13 (D.D.C. Mar. 10, 2025) (citations omitted).

Finally, the DOJ's prosecution of a sitting member of Congress and the President's decision to issue a pardon of that member concern quintessential federal government activity.

The same facts, and the need for information about the case against Rep. Cuellar and the decision to issue a presidential pardon, ending the prosecution and any accountability for his alleged illegal acts, also raise possible questions in "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv). First, the indictment against Rep. Cuellar raises serious questions about a public official's use of his office to benefit his family, a foreign government, and a foreign corporation of another country. Rep. Cuellar's conduct itself implicates serious misconduct that "affect[s] public confidence" in the federal government. *Id.* The American public cannot trust that its elected representatives are working for them if they are allowed to use their official positions to benefit foreign powers or corporations without consequence. Second, President Trump's abrupt decision to pardon Rep. Cuellar and subsequent outrage at Cuellar's decision to run for Congress as a Democrat raises concerns about the integrity of President Trump's use of the pardon power in this instance and in general, as a tool of political favoritism.

It is the responsibility of the federal government and in particular, the Department of Justice, to ensure that such abuses of power are held to account. In view of the reporting of the seriousness of Rep. Cuellar's offense and the pardon he received without explanation, the public rightly raises questions, and has a right to know, the circumstances around the questions at issue in this request.

The undersigned certifies that the above statement is true and correct.

## Conclusion

If you have any questions about this request or foresee any problems in fully releasing the requested records, please email me at agoldstein@citizensforethics.org and foia@citizensforethics.org or call me at (202) 408-5565. Also, if CREW's request for a fee waiver is denied, please contact our office immediately upon making such a determination.

Where possible, please produce records in electronic format. Please send the requested records to agoldstein@citizensforethics.org and foia@citizensforethics.org or by mail to Alex Goldstein, Citizens for Responsibility and Ethics in Washington, P.O. Box 14596, Washington, D.C. 20044. Thank you for your assistance in the matter.

Sincerely,

*Alex Goldstein*

Alex Goldstein
Associate Counsel